E-FILED
Thursday, 17 July, 2025  05:21:03 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS,
## SPRINGFIELD DIVISION

| | |
|---|---|
| **AMY E. RING,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 3:25-cv-03213** |
| **BOARD OF EDUCATION OF PLEASANT PLAINS COMMUNITY UNIT SCHOOL DISTRICT #8,** | **Jury Trial Demanded**<br>**Equitable Relief Is Sought** |
| **Defendant.** | |

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Amy E. Ring, by her undersigned counsel, for her Complaint against defendant Board of Education of Pleasant Plains Community Unit School District #8 ("Defendant" or "District") alleges as follows:

### Nature of the Action

1.      This is an action by plaintiff Amy Ring ("Plaintiff"), arising under the Family and Medical Leave Act (the "FMLA"), alleging interference with and retaliation for exercising her rights thereunder by Defendant.

2.      Further, Plaintiff hereby invokes this Court's supplemental jurisdiction to bring a claim under the Illinois Human Rights Act (the "IHRA"), 775 ILCS 5/1-101, *et seq.*, against Defendant for discriminating and retaliating against Plaintiff on the basis of her disability status, as well as failing to reasonably accommodate Plaintiff's disability or engage in an interactive process with Plaintiff to do so.

### Jurisdiction and Venue

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that Plaintiff's claims arise under the federal FMLA, 29 U.S.C. § 2601, *et seq.*

4.      This Court has subject matter jurisdiction over this action pursuant to its supplemental jurisdiction under 28 U.S.C. § 1367(a), in that Plaintiff's state law claims under the IHRA form

part of the same case or controversy.

5.    This Court has personal jurisdiction over Defendant because its principal place of business is in this district.

6.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the events giving rise to Plaintiff's claims occurred in this district.

7.    The Complaint is properly filed in the Springfield Division pursuant to Civil Local Rule 40.1(E)(2) because the case arose in Sangamon County, Illinois.

8.    Plaintiff has properly exhausted her administrative remedies, see *infra*.

### The Parties

9.    Plaintiff, Amy Ring, is an adult Illinois resident and resides in Pleasant Plains, Illinois.

10.    At all times material to this Complaint, Plaintiff was an "eligible employee" within the meaning of 29 U.S.C. § 2611(2), because she has been employed by Defendant for at least twelve months prior to the events described in this Complaint and worked at least 1,250 hours for Defendant during the twelve-month period preceding the covered leave period described herein.

11.    At all times material to this Complaint, Plaintiff was entitled to FMLA leave under 29 U.S.C. § 2612(a)(1)(D) due to her serious health condition requiring continuing treatment, anxiety.

12.    At all times material to this Complaint, Plaintiff was a disabled individual within the meaning of 775 ILCS 5/1-103(I)(1)(a), because she has a mental disability, anxiety, which is unrelated to her ability to perform the duties of her particular job or position.

13.    At all times material to this Complaint, Plaintiff was an "employee" within the meaning of Section 2-101(A)(1) of the IHRA. 775 ILCS 5/2-101(A)(1).

14.    Defendant is a governmental agency located in central Illinois, organized and existing pursuant to the Illinois School Code, 105 ILCS 5/1-1 *et seq.*, and may be sued pursuant to Section 5/10-2 of the School Code, 105 ILCS 5/10-2. It maintains a principal place of operations in Pleasant Plains, Illinois. Defendant's President is Cayla Keyes, succeeding Gregg Humphrey ("Humphrey") following elections on April 1, 2025.

15.    At all times material to this Complaint, Defendant was an "employer" within the meaning of 29 U.S.C. § 2611(4), because it employs fifty or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year and is a public agency within the meaning of 29 U.S.C. § 203(x).

16.    At all times material to this Complaint, Defendant was an "employer" within the meaning of Section 2-101(B)(1)(c) of the IHRA. 775 ILCS 5/2-101(B)(1)(c).

## Factual Allegations

### Background

17.    From on or about April 21, 2008 to the 2023–24 school year, Plaintiff was an art teacher in contractual continued service, also referred to as being "tenured," at one of Defendant's schools, Farmingdale Elementary ("Farmingdale").

18.    At all relevant times, Plaintiff held and holds a Professional Educator License, also referred to as a "teaching" or "teacher's" license, issued by the Illinois State Board of Education.

19.    Farmingdale serves students from pre-kindergarten to fourth grade.

20.    Plaintiff is a member of the Pleasant Plains Education Association, Illinois Education Association-NEA ("Union"). The Illinois Education Association ("IEA") is the parent organization of the Union, providing resources and support as needed.

21.    The Union and Defendant are parties to a series of collective bargaining agreements, the most recent of which is in effect from August 17, 2023 through August 15, 2026 ("CBA").

### Plaintiff's Original Position as Art Teacher

22.    As an art teacher, Plaintiff worked in close proximity to other "specials" teachers, meaning teachers responsible for other art, music, or similar nontraditionally-academic classes.

23.    The art teacher position requires a Professional Educator License as a qualification for employment.

24.    Plaintiff taught art to students from kindergarten through fourth grade.

25.    Plaintiff's job duties included the creation of art curriculum and art lesson plans, the

maintenance of grades and records related to the art classes she taught, and the ordering of art materials.

26.    Plaintiff exercised authority over her own, solely-assigned physical classroom.

27.    Plaintiff engaged with her students' parents in student-teacher conferences.

28.    Plaintiff independently ran Farmingdale's elementary art program.

29.    Plaintiff coordinated with middle and high school art teachers to align curriculums and collaborate on pedagogical techniques.

30.    Plaintiff's status was that of the primary, dedicated art teacher with authority over all elementary students.

31.    Plaintiff was the sole individual responsible for students' success in the subject of art at Farmingdale.

32.    Plaintiff was also required to supervise forty minutes of recess three times per week, and twenty minutes twice per week.

**Plaintiff's Family and Medical Leave Act Leave and Attempts to Return to Work**

33.    On or about August 14, 2023, Plaintiff requested FMLA leave from Defendant.

34.    On August 14, 2023, at Plaintiff's direction, Plaintiff's Licensed Clinical Professional Counselor, Kay Gottrich ("Gottrich") sent Defendant's agent, District Superintendent Luke Brooks ("Brooks"), a completed FMLA medical certification form and a letter recommending Plaintiff take FMLA leave due to a medical condition, anxiety, between August 17, 2023 and October 17, 2023.

35.    Defendant had previous notice of Plaintiff's anxiety disorder via a November 11, 2020 letter from a physician regarding teaching remotely during the COVID-19 Pandemic.

36.    On or about August 21, 2023, Defendant approved Plaintiff's FMLA leave request, with the sole caveat that she provide a fitness-for-duty certification from her medical provider before returning to work.

37.    On August 24, 2023, Plaintiff emailed Brooks and Defendant's Curriculum Director

Jill Fessler ("Fessler") about meeting to discuss her return to work.

38.    On August 29, 2023, Plaintiff met with Brooks to discuss the timeline for her return to work, expressing interest in returning to work on September 5, 2023.

39.    Brooks and Plaintiff agreed that Plaintiff would need medical approval before returning to work early.

40.    Between August 30 and September 1, 2023, Plaintiff kept Brooks apprised of delays in submitting approval before September 5, 2023.

41.    On September 5, 2023, Brooks received a letter from Gottrich approving Plaintiff to return to work earlier than October 17, 2023, citing Plaintiff's positive response to treatment.

42.    Gottrich's letter indicated that Plaintiff could return to work as early as September 6, 2023, if she was temporarily relieved of recess supervision duties. The letter requested as a reasonable accommodation that recess supervisory responsibilities be gradually reintroduced through the addition of one supervision period every two weeks beginning on September 18, 2023, such that prior to September 18, she would have no recess supervisory duties.

43.    The letter requested that Defendant provide reasonable accommodations for Plaintiff's anxiety, including the presence of a third party, during certain interactions with her then-supervisor, Farmingdale Principal Jamie Yates ("Yates"), due to repeated hostile behavior such as lurking outside of her classroom door.

44.    The letter further requested as a reasonable accommodation that Plaintiff be able to leave during the school day in the event of any mental health disturbances resulting from further antagonism by Yates.

45.    Brooks emailed Plaintiff that he would need to check with Defendant's attorney before moving forward.

46.    On September 6, 2023, Brooks emailed Plaintiff to inform her that Defendant would require an independent medical evaluation before she returned to work.

47.    Brooks also denied Plaintiff's requested accommodations, without offering any alternative accommodations.

48.     In denying Plaintiff's request, Brooks did not assert that the requested accommodation was either prohibitively expensive or unduly disruptive to Defendant's operations.

49.     On September 7, 2023, Brooks sent Plaintiff a formal letter reiterating Defendant's request for an independent medical evaluation. The letter did not address Plaintiff's request for accommodations.

50.     On or about September 7, 2023, Gottrich left a voicemail for Brooks offering to answer any questions or concerns regarding her September 5, 2023 letter.

51.     On September 13, 2023, Plaintiff ran out of paid leave through the CBA.

52.     On September 14, 2023, Plaintiff's primary care physician faxed a letter to Defendant approving her return to work on September 18, 2023, citing improvement to her condition due to medication and counseling.

53.     On or about September 15, 2023, Plaintiff emailed Brooks to notify him of the fax.

54.     On September 16, 2023, Brooks responded that he would be in touch following the independent medical evaluation and consultation with Defendant.

55.     On September 18, 2023, Defendant's chosen independent medical evaluator, Terry M. Killian ("Killian"), met with Plaintiff for evaluation.

56.     On or about September 25, 2023, Killian cleared Plaintiff to return to work in a report submitted to Defendant. Killian diagnosed Plaintiff with an "[u]nspecified anxiety disorder with some mild PTSD symptoms."

57.     Killian recommended against Plaintiff's requested reasonable accommodations. In recommending against Plaintiff's request, Killian did not assert that the requested accommodation was either prohibitively expensive or unduly disruptive to Defendant's operations.

**Plaintiff's Return to Work and Reassignment**

58.     On or about September 26, 2023, Brooks emailed Plaintiff to request a meeting the following Thursday, September 28, 2023. Brooks stated that he did not wish to move the substitute teacher, Lori Nelson ("Nelson") from Plaintiff's original position.

59.    Nelson did not have a Professional Educator License, only a Substitute Teaching License, which is not endorsed for teaching art.

60.    Defendant has previously granted non-disabled employees returning from medical leave the same or an equivalent position they left.

61.    Brooks is not disabled nor engaged in protected activity under the IHRA.

62.    In his email, Brooks told Plaintiff that she would return to work in a different, then-unspecified position, and stated that Plaintiff could resign if she objected to the reassignment.

63.    Brooks also acknowledged that Plaintiff did not want to be reassigned.

64.    On or about September 27, 2023, Plaintiff sought a copy of Killian's evaluation clearing her for return to work from Brooks, but was unable to get it because Brooks was out of the office.

65.    On September 28, 2023, Brooks and Plaintiff met. Brooks again declined to return Plaintiff to her original position as an art teacher, and instead presented her the opportunity to serve as an "instructional coach," providing direct instruction to students in need of additional support in math and reading.

66.    Plaintiff lacked experience in or specialized training for the described position; her Professional Educator License does not have a relevant "Early Childhood Education," "Elementary Education," "Elementary Mathematics Specialist," "Reading Teacher," or "Reading Specialist" endorsement as recognized by the Illinois State Board of Education, only an "Art" endorsement for Kindergarten through Grade 12.

67.    On October 2, 2023, Brooks sent Plaintiff a letter alleging the reassignment was sufficiently equivalent to her old position to comply with the FMLA.

68.    In the same letter, Brooks stated that "it is unclear as to whether your leave qualifies as FMLA leave," despite Defendant having previously approved it as such.

69.    The October 2, 2023 letter contained a summary of certain job duties and qualifications for the position, but did not contain a return-to-work date or title for the position.

70.    On or about October 4, 2023, Plaintiff emailed Brooks that she objected to Defendant's decision to reassign her, but stated that she was willing to return to work and perform the new

duties.

71.    On or about October 4, 2023, Brooks responded that he would have a date of return to work, job title, and full response to Plaintiff's email by October 6, 2023.

72.    On or about October 6, 2023, Brooks emailed Plaintiff that she would return to work on October 11, 2023 as an "intervention teacher." Brooks stated that Yates would be in contact with details.

73.    On or about October 6, 2023, Yates emailed Plaintiff describing her job duties as being "reading based, fine motor based or math based depending on the needs of the kids," as well as involving "reteach[ing]" math skills to students in order for them to be reassessed. He also stated that he would provide Plaintiff information on October 10, 2023 regarding supervision of lunch and recess.

74.    Defendant assigned Plaintiff a new classroom on the opposite end of the building from her previous art classroom and other "specials" teachers, despite an existing vacant classroom closer to her previously assigned art classroom

75.    Plaintiff's newly assigned classroom was already assigned to a different employee, who vacated the classroom at Defendant's direction to facilitate Plaintiff's reassignment.

76.    On October 11, 2023, Plaintiff returned to work as an "instructional coach" or "intervention teacher."

77.    By October 18, 2023, Nelson was informing students that she would be their art teacher for the remainder of the year.

78.    Upset students approached Plaintiff about her absence from the art program, distressing Plaintiff further.

79.    Defendant reassigned Plaintiff because of her requests to use, and subsequent use of, FMLA leave, as well as because of her disability, anxiety, and requests for reasonable accommodation thereof.

**Plaintiff's Original Art Position After Her Reassignment**

80.    Following Plaintiff's return to work, art classes continued to be taught by Nelson through the remainder of the 2023–24 school year.

81.    Defendant permitted Nelson to supervise only twenty minutes of recess once per week, rather than the five sessions of varying length Plaintiff was responsible for as an art teacher. Instead, Nelson supervised the "homework room," which is structured and quiet, unlike recess.

82.    Defendant never offered Plaintiff the opportunity to supervise the homework room instead of recess.

83.    As of the 2024–25 school year, Nelson is a "Reading Aide," which does not require a Professional Educator License, at Farmingdale.

**Plaintiff's New Position After Her Reassignment**

84.    Whether called an "Instructional Coach," "Intervention Teacher," or "Interventionist," or "Math and Reading Support Teacher," Plaintiff's duties are substantially the same as that of some support staff in positions not requiring a Professional Educator License, effectively a demotion.

85.    Since reassignment, Plaintiff no longer teaches art, and has no duties related to art.

86.    In the 2023–24 school year, Plaintiff retaught lessons and materials prepared and already taught by students' dedicated math and reading teachers. Plaintiff re-proctored tests prepared and already proctored by students' primary, dedicated math and reading teachers when students failed. As a result, the students she was responsible for changed week to week with their academic performance.

87.    Farmingdale maintains its separate "homework room" for the same purpose.

88.    Plaintiff had no contact with parents of students.

89.    Following her reassignment, other teachers criticized Plaintiff for not adequately reteaching their students in math and reading.

90.    Beginning in the 2024–25 school year, Plaintiff's job duties relating to reading changed to monitoring six groups of kindergarten through second grade students as they complete computer

programs pertaining to reading skills. Plaintiff provides students' primary teachers printed copies of the students' computer program completion data three times per year, or more specific data at the primary teacher's request. Plaintiff also prints out certificates celebrating student achievement.

91.     Plaintiff assumed these duties in replacement of "Interventionist" Missy Coffey ("Coffey"), a support staff member without a Professional Educator License, following Coffey's reassignment to a "Reading Aide" position.

92.     Regarding math, Plaintiff continues to reteach math lessons, as instructed by students' primary teachers, to third and fourth grade students. Groups of students rotate every two weeks.

93.     Plaintiff does not grade or record grades from students.

94.     Plaintiff did not begin working with students until two weeks after the start of the 2024–25 school year, while students' primary teachers and other support staff tested students to identify remedial needs. Teachers, including Hegele, otherwise resumed their normal duties, principally teaching students, at the start of the 2024–25 school year.

95.     Instead of working with students like teachers, Defendant encouraged Plaintiff to rely on Coffey to train Plaintiff in Plaintiff's new duties. While Coffey was highly responsive to Plaintiff and provided the guidance she could, Coffey's obligations as a Reading Aide took precedence, and Defendant left Plaintiff to attempt to fill training gaps herself.

96.     Plaintiff's status is subordinate to students' primary teachers, and Plaintiff only has fleeting authority over those students in need of specific additional assistance in learning math and reading.

97.     To whatever extent Plaintiff is responsible for students' success, it is shared with the students' primary teachers and subordinate to those teachers' efforts.

98.     While "interventionist"-type positions not requiring a Professional Educator License are undoubtedly important to the success of students, they require a different skillset than that of traditional, licensed teaching, i.e. that which requires a Professional Educator License.

99.     Reading and math as subjects are significantly distinct from art, both in substance and in pedagogy.

100.    Plaintiff's reassignment to a role below and outside her licensed and trained profes-sional capacity creates a gap in her resume and accumulation of professional experience which she will necessarily have to explain to future employers.

**Defendant's Subsequent Pretextual Discipline of and Threats to Plaintiff**

101.    On or about November 2, 2023, Plaintiff made a brief audio recording of a kindergarten student's voice that she deleted shortly after playing it in person for a small number of other teach-ers for humorous effect.

102.    On November 3, 2023, Yates met with Plaintiff regarding her conduct of November 2, 2023. Yates stated that Plaintiff violated multiple laws, and that he would have to notify the stu-dent's parents and Defendant. Brooks joined the meeting, and began yelling at Plaintiff. He told her to "take the weekend to think about termination." Yates stated that Brooks would follow up with Plaintiff.

103.    Plaintiff had no previous discipline.

104.    On November 6, 2023, Brooks suspended Plaintiff for ten days without pay until No-vember 17, 2023. Brooks stated that he would refer the matter to Defendant.

105.    On or about November 10, 2023, the Union filed on behalf of Plaintiff a grievance under Defendant and the Union's collective bargaining agreement, alleging, in relevant part, that Defendant violated the CBA in its treatment of Plaintiff.

106.    On or about November 15, 2023, in its response to the grievance, Defendant stated again, in relevant part, that Plaintiff had not been entitled to FMLA leave and that, as such, her leave of absence did not count as FMLA leave.

107.    On November 16, 2023, Brooks extended Plaintiff's suspension from November 17 until November 28, 2023, in order for Defendant to consider further discipline. The extended sus-pension was with pay, unlike the original unpaid suspension from November 6–17, 2023.

108.    The paid extension of Plaintiff's suspension coincided in part with the November 22–24, 2023 Thanksgiving Break, for which employees are not paid.

11

109.     On November 28, 2023, Defendant issued Plaintiff an additional suspension, without pay, to January 9, 2024.

110.     On December 27, 2023, Defendant's then-President Humphrey emailed a claim to Plaintiff's Union representative that Plaintiff's alleged misconduct of November 2, 2023 "may require reporting to the Illinois State Board of Education and the Illinois Department of Child and Family Services regarding sexual exploitation of a special needs student" and referral to the Sangamon County State's Attorney.

111.     Humphrey and other agents of Defendant are mandated reporters under Illinois's Abused and Neglected Child Reporting Act. 325 ILCS 5/4(a)(4). This status gives them a duty "to *immediately* report to the Department [of Child and Family Services] when they have reasonable cause to believe that a child known to them in their professional or official capacities *may* be an abused child." 325 ILCS 5/4(a) (emphases added).

112.     If Humphrey and other agents of Defendant had "reasonable cause to believe that" Plaintiff may have abused the child, then failure to immediately report her conduct as such would breach their legal duties as education personnel under the Abused and Neglected Child Reporting Act.

113.     If Humphrey and other agents of Defendant did not have "reasonable cause to believe that" Plaintiff may have abused the child, then Humphrey's threat was baseless and retaliatory.

114.     No report against Plaintiff for her alleged misconduct was ever made to the Illinois State Board of Education, the Department of Child and Family Services, or the Sangamon County State's Attorney.

115.     Plaintiff did not sexually exploit the student in question, or any other student, nor has she done so subsequently.

116.     If the student in question had special needs, Defendant did not make Plaintiff was aware through the provision of an Individualized Education Plan for the student or list of students with Section 504 accommodations to Plaintiff.

117.     Defendant previously disciplined non-disabled employees who had not engaged in

protected activities, and who were accused of similar, or worse, misconduct, more leniently than Plaintiff. Defendant did not threaten to report such employees to any outside agency or entity.

118.    On or about January 9, 2024, Defendant provided Plaintiff a draft "Notice to Remedy" for the same conduct that resulted in the earlier suspensions, threatening her with dismissal.

119.    Under the Illinois School Code, a Notice to Remedy constitutes the first step of the statutory procedure for dismissing a tenured teacher. 105 ILCS 5/24-12(d)(1).

120.    On January 29, 2024, Defendant held a Board of Education meeting to discuss the proposed Notice to Remedy. IEA UniServ Director Amelia Finch ("Finch") spoke on Plaintiff's behalf as her union representative.

121.    Later that evening following Finch's presentation, an attorney for Defendant told Finch that Plaintiff "needed to be taught a lesson."

122.    Defendant adopted a final Notice to Remedy at the Board of Education meeting on January 29, 2024. The Defendant Board's adoption of the Notice to Remedy was a matter of public record.

123.    On February 1, 2024, Brooks emailed Plaintiff the final Notice to Remedy as adopted by Defendant.

**Plaintiff's Reassignment Is Made Permanent**

124.    On or about February 21, 2024, Yates observed Plaintiff in the course of her new duties. In a post-observation meeting, Yates told her to continue working as she was, and that she would likely be working in the same position the following year.

125.    On or about April 4, 2024, Defendant posted a Notice of Vacancy for the position of Farmingdale Elementary Art Teacher, soliciting applicants for the position and directing that application materials be sent to Yates.

126.    The CBA provides that mid-school year vacancies occur in the event of 1) death of an employee; 2) retirement of an employee; 3) resignation of an employee; 4) termination of an employee; 5) creation of a new bargaining unit position; or 6) permanent disability and/or

13

incapacitation.

127.    None of the above-described conditions applied to Plaintiff or the position.

128.    Defendant did not otherwise notify Plaintiff of its intent to permanently fill her original position prior to soliciting applications, nor did Defendant offer Plaintiff the opportunity to re-apply to her original position.

129.    Upon notice of the posting, Plaintiff did not attempt to apply because Defendant had made clear that such an attempt would be futile.

130.    On or about April 11, 2024, Defendant hired Farmingdale Kindergarten Teacher Kelly Hegele ("Hegele") for the "vacant" Art Teacher position.

131.    Hegele's Professional Educator License was not endorsed for teaching elementary school art.

132.    Hegele assumed the Art Teacher position at the start of the 2024–25 school year; Nelson completed the 2023–24 school year teaching art.

133.    On April 24, 2024, Yates's formal evaluation of Plaintiff rated Plaintiff as "Basic," the second-lowest rating, in criteria relating to Plaintiff's professionalism. Yates's evaluation made clear that Plaintiff would remain in her reassigned position.

134.    As of on or about May 16, 2024, Plaintiff still had personal items remaining in her original art classroom.

135.    By on or about May 28, 2024, Defendant replaced Yates as Principal of Farmingdale with Erica Shannon ("Shannon").

136.    On or about May 28, 2024, Shannon informed Plaintiff that her job duties would no longer include student reading groups from kindergarten through fourth grade, or reteaching math, replacing them with the duties described above in ¶¶ 90, 92–93.

137.    Beginning in the 2024–25 school year, Defendant required Plaintiff to share her class-room with the "character education" teacher. "Character education" focuses on the personal, social and emotional growth of the child, rather than any traditional pedagogy.

**Defendant's Latest Discipline of Defendant**

138.    On or about February 5, 2024, Plaintiff, again requested FMLA leave, and submitted to Defendant an FMLA medical certification form signed by Gottrich, estimating that treatment for Plaintiff's condition would last past July 2024, potentially into December 2024, and confirming that she required intermittent leave.

139.    Defendant did not respond to Plaintiff's FMLA request.

140.    Plaintiff declined to press the matter for fear of further retaliation.

141.    On October 25, 2024, Shannon invited Plaintiff via email to a meeting on October 28, 2024 to discuss Plaintiff's attendance that week.

142.    During the October 28, 2024 meeting, Shannon reprimanded Plaintiff for allegedly improperly leaving the building early on October 22 and 24, 2024, and allegedly not adequately performing her new job duties.

143.    Plaintiff explained that her new job duties continued to be overwhelming at times, in reference to her documented, medically-diagnosed anxiety.

144.    On or about October 28, 2024, Shannon informed Plaintiff that her personnel file contained no record of her suspensions or Notice to Remedy.

145.    On November 1, 2024, Shannon sent Plaintiff a letter recounting the October 28, 2024 meeting, additionally reprimanding her for allegedly improperly leaving the building early on three additional dates in September and October 2024, not discussed during the meeting. Shannon stated that Plaintiff could not leave early "[r]egardless of [Plaintiff's] reasons." Shannon threatened additional discipline in future. Defendant purported to place the reprimand in Plaintiff's personnel file.

146.    Plaintiff's reason for leaving the building early on the dates listed in the November 1 letter was unexpected flare-ups of her anxiety, for which she had requested or attempted to request intermittent FMLA leave.

147.    On or about December 4, 2024, Plaintiff submitted a rebuttal to Shannon's November 1, 2024 reprimand for inclusion within her personnel file. Plaintiff reiterated that she had

followed proper procedure for leaving her position early by providing notice to Farmingdale's secretary and continuing to work until designated relief arrived. Plaintiff also noted that she qualified for intermittent FMLA leave despite Defendant's unresponsiveness to her last request.

148.    On or about July 11, 2025, after Plaintiff requested a copy of her complete personnel file, pursuant to Illinois's Personnel Record Review Act, 820 ILCS 40/1 *et seq.*, from Brooks, Defendant provided copies of Plaintiff's 2008-09 through 2012-13 and 2023-24 performance evaluations, all with at least "satisfactory" or "proficient" scores, but no disciplinary or leave records.

149.    Plaintiff makes her best efforts to meet the needs of students in a position for which she was not professionally prepared and lacked experience in or specialized training for, but continues to struggle to perform to the same standards to which she is accustomed in her field of expertise, teaching art.

**The Unfair Labor Practice Charge Relating to Defendant's Treatment of Plaintiff**

150.    On January 2, 2024, the Union filed an Unfair Labor Practice Charge ("ULP Charge") with the Illinois Educational Labor Relations Board ("IELRB"), Case No. 2024-CA-0031-C, alleging that Defendant violated Sections 14(a)(1) and (3) of the Illinois Educational Labor Relations Act ("IELRA"), 115 ILCS 5/1 *et seq*., in relation to Plaintiff's exercise of protected rights under the IELRA.

151.    On or about July 23, 2024, Defendant filed its Position Statement responding to the Union's ULP Charge. Defendant's Position Statement asserted, in relevant part, that the independent medical examiner's September 18, 2023 confirmation of Plaintiff's ability to return to work meant that Plaintiff was not eligible for leave under the FMLA.

152.    Defendant's Position Statement repeatedly alleged that Plaintiff was not disabled, or that she even fabricated her disability.

153.    Defendant's Position Statement further alleged that past absences during the 2022–23 and 2023–24 school years, most of which were taken due to Plaintiff's anxiety, meant that Plaintiff was "unreliable." Defendant alleged that the "instructional continuity" of her art classroom had

suffered as a result, and that students were better served by Nelson.

154.    The Union's Charge remains pending before the IELRB as of the filing of this Complaint, and Plaintiff does not present its merits to the Court.

**Plaintiff's Unpursued FMLA Administrative Complaint**

155.    On or about May 7, 2024, Plaintiff sent via certified mail a complaint regarding Defendant's conduct under the FMLA to the federal Department of Labor Wage and Hour Division office in Springfield, Illinois.

156.    On May 14, 2024, Plaintiff's complaint arrived at the Springfield office, left with an unidentified individual per the United States Postal Service's tracking service.

157.    On or about March 10, 2025, after multiple attempts, undersigned counsel successfully contacted by telephone an investigator with the Wage and Hour Division for an update on the status of Plaintiff's complaint. The investigator explained that she could not locate a record of the complaint, and that the individual who would have knowledge of its receipt had recently left government service due to the Trump Administration's "fork in the road" initiative.

158.    On March 11, 2025, Plaintiff re-submitted, via email, her complaint to the Wage and Hour Division.

159.    On March 18, 2025, an agent of the Wage and Hour Division called Plaintiff to discuss the contents of her complaint.

160.    On or about March 24, 2025, the agent informed Plaintiff that the Wage and Hour Division would not pursue Plaintiff's complaint, and that she could instead pursue a private action.

**Exhaustion of Administrative Remedies Under the IHRA**

161.    On March 14, 2024, Plaintiff timely filed a Charge of Discrimination ("Charge") with the Illinois Department of Human Rights ("IDHR"), alleging discrimination by Defendant based on her disability, anxiety, and retaliation for engaging in protected activities. The IDHR promptly served Defendant with a copy of the Charge. A copy of the Charge is attached hereto as Exhibit 1.[1]

---

[1]    Exhibit 1's Attachment to Charge of Discrimination erroneously refers to itself as containing eleven, rather than ten, pages. Personally identifying information has been redacted pursuant to FRCP 5.2 and Civil

162.    On April 14, 2025, following an extension to its investigation consented to by the parties, the IDHR issued a Notice of Dismissal regarding Plaintiff's Charges against Defendant. A copy of the Notice of Dismissal is attached hereto as Exhibit 2.

163.    The Notice of Dismissal set a deadline of July 18, 2025 for Plaintiff to file a request for review with the Illinois Human Rights Commission, or commence a civil action in an appropriate court within ninety days of receipt of the Notice of Dismissal.

164.    On July 7, 2025, Plaintiff notified the Equal Employment Opportunity Commission ("EEOC"), with which the Charge was automatically cross-filed by the IDHR, of Plaintiff's intent to exhaust her state remedies. A copy of Plaintiff's notice to the EEOC is attached hereto as Exhibit 3.

165.    Plaintiff has properly exhausted her administrative remedies as a prerequisite to the filing of the instant lawsuit.

## Counts I–XIV: Violations of the Family and Medical Leave Act

### Count I

**Interference With Plaintiff's Exercise of Rights Under the FMLA, in Violation of 29 U.S.C. § 2615(a)(1) – Forced Transfer of Positions**

166.    Plaintiff re-alleges and incorporates herein by reference the contents of ¶¶ 1–165.

167.    The FMLA, 29 U.S.C. § 2615(a)(1), prohibits an employer from interfering with, restraining, or denying the exercise of, or the attempt to exercise, any right provided by the FMLA.

168.    Plaintiff exercised a right under the FMLA when she took or attempted to take approved, qualifying leave for anxiety, which qualified as a "serious health condition" under the FMLA, from on or about August 21, 2023 to on or about October 17, 2023.

169.    By transferring Plaintiff to the "instructional coach" / "intervention teacher" position during the 2023–24 school year following her return from FMLA leave which was not equivalent to her position as an art teacher, contrary to 29 U.S.C. § 2614, Defendant interfered with,

LR 5.11(A).

18

restrained, and denied the exercise of, and attempt to exercise, Plaintiff's rights under the FMLA.

WHEREFORE, Plaintiff respectfully prays that this Court grant:

A.      An order directing Defendant to reinstate Plaintiff to the art teacher position in which she would now be employed but for the unlawful transfer, pursuant to 29 U.S.C. § 2617(a)(1)(B);

B.      A declaration that Defendant violated the FMLA when it placed Plaintiff in the "intervention teacher" position following her September 2023 release to return to work;

C.      Plaintiff's costs of this action, reasonable attorney's fees and reasonable expert witness fees, pursuant to 29 U.S.C. § 2617(a)(3);

D.      Such other and further relief as the Court finds just and proper, pursuant to 29 U.S.C. § 2617(a)(1)(B);

E.      Enter a judgment in favor of Plaintiff and against Defendant providing for such relief.

## Count II

### Interference With Plaintiff's Exercise of Rights Under the FMLA, in Violation of 29 U.S.C. § 2615(a)(1) – Failure to Restore to Original Position

170.    Plaintiff re-alleges and incorporates herein by reference the contents of ¶¶ 1–165.

171.    By failing to restore Plaintiff to the position she held when her leave commenced or an equivalent position, contrary to 29 U.S.C. § 2614, Defendant interfered with, restrained, and denied the exercise of, and attempt to exercise, Plaintiff's rights under the FMLA.

WHEREFORE, Plaintiff respectfully prays that this Court grant:

A.      An order directing Defendant to reinstate Plaintiff to the art teacher position in which she would now be employed but for the unlawful refusal to restore Plaintiff's position, pursuant to 29 U.S.C. § 2617(a)(1)(B);

B.      A declaration that Defendant violated the FMLA when it refused to return Plaintiff to her position as art teacher, or an equivalent position, following her September 2023

release to return to work;

C.     Plaintiff's costs of this action, reasonable attorney's fees and reasonable expert witness fees, pursuant to 29 U.S.C. § 2617(a)(3);

D.     Such other and further relief as the Court finds just and proper, pursuant to 29 U.S.C. § 2617(a)(1)(B);

E.     Enter a judgment in favor of Plaintiff and against Defendant providing for such relief.

## Count III

**Interference With Plaintiff's Exercise of Rights Under the FMLA, in Violation of 29 U.S.C. § 2615(a)(1) – September 6, 2023 to October 11, 2023
Delay in Returning Plaintiff to Work**

172.    Plaintiff re-alleges and incorporates herein by reference the contents of ¶¶ 1–165.

173.    By needlessly delaying Plaintiff in returning to work between September 6, 2023 and October 11, 2023, despite approval to return to work as early as September 6, 2023 from Plaintiff's medical provider, Defendant interfered with, restrained, and denied the exercise of, and attempt to exercise, Plaintiff's rights under the FMLA.

174.    As a direct and proximate result of Defendant's violations of 29 U.S.C. § 2615(a)(1), Plaintiff has suffered economic damages, including lost wages and interest she would have earned on that money.

WHEREFORE, Plaintiff respectfully prays that this Court grant:

A.     Damages equal to the amount of wages, salary, employment benefits, and other compensation denied or lost, or other actual monetary loss to Plaintiff by reason of the unlawful delay in returning Plaintiff to work, together with interest thereon, pursuant to 29 U.S.C. § 2617(a)(1)(A)(i) and (ii);

B.     An additional amount as liquidated damages equal to the amount of damages and interest awarded as requested in paragraph (A) above, pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii);

C. A declaration that Defendant violated the FMLA when it delayed Plaintiff in returning to work between September 6, 2023 and October 11, 2023;

D. Plaintiff's costs of this action, reasonable attorney's fees and reasonable expert witness fees, pursuant to 29 U.S.C. § 2617(a)(3);

E. Such other and further relief as the Court finds just and proper, pursuant to 29 U.S.C. § 2617(a)(1)(B);

F. Enter a judgment in favor of Plaintiff and against Defendant providing for such relief.

## Count IV

**Interference With Plaintiff's Exercise of Rights Under the FMLA, in
Violation of 29 U.S.C. § 2615(a)(1) – Assertion of Illegitimacy of Prior Leave**

175. Plaintiff re-alleges and incorporates herein by reference the contents of ¶¶ 1–165.

176. A claim for interference with FMLA rights does not require the actual denial of benefits. *Ziccarelli v. Dart*, 35 F.4th 1079, 1085 (7th Cir. 2022).

177. By asserting on October 2, 2023 and thereafter that Plaintiff's FMLA leave was not legitimate FMLA leave despite previously approving the leave, suggesting that Plaintiff had been absent without legal protection from discrimination, retaliation, or discipline, Defendant interfered with, restrained, and denied the exercise of, and attempt to exercise, Plaintiff's rights under the FMLA.

178. As a direct and proximate result of Defendant's violations of 29 U.S.C. § 2615(a)(1), Plaintiff has suffered from the derogation of her rights under the FMLA, chilling her in the exercise of such rights.

WHEREFORE, Plaintiff respectfully prays that this Court grant:

A. An order directing Defendant to cease and desist from asserting the illegitimacy of Plaintiff's approved FMLA leave, pursuant to 29 U.S.C. § 2617(a)(1)(B);

B. A declaration that Defendant violated the FMLA when it asserted that Plaintiff's approved FMLA leave was illegitimate;

C.      Plaintiff's costs of this action, reasonable attorney's fees and reasonable expert witness fees, pursuant to 29 U.S.C. § 2617(a)(3);

D.      Such other and further relief as the Court finds just and proper including, but not limited to, revision of any personnel records to confirm and reflect Defendant's 2023 approval of Plaintiff's FMLA leave, pursuant to 29 U.S.C. § 2617(a)(1)(B);

E.      Enter a judgment in favor of Plaintiff and against Defendant providing for such relief.

## Count V

### Interference With Plaintiff's Exercise of Rights Under the FMLA, in Violation of 29 U.S.C. § 2615(a)(1) – Refusal to Process or Acknowledge Plaintiff's February 2024 FMLA Request

179.    Plaintiff re-alleges and incorporates herein by reference the contents of ¶¶ 1–165.

180.    By refusing to process Plaintiff's FMLA leave request in February 2024, Defendant interfered with, restrained, and denied the exercise of, and attempt to exercise, Plaintiff's rights under the FMLA.

181.    As a direct and proximate result of Defendant's violations of 29 U.S.C. § 2615(a)(1), Plaintiff has suffered from the derogation of her rights under the FMLA, chilling her in the exercise of such rights.

WHEREFORE, Plaintiff respectfully prays that this Court grant:

A.      An order directing Defendant to appropriately process Plaintiff's February 2024 FMLA request, and place appropriate records of such in Plaintiff's personnel file, if applicable, pursuant to 29 U.S.C. § 2617(a)(1)(B);

B.      A declaration that Defendant violated the FMLA when it ignored Plaintiff's February 2024 FMLA leave request;

C.      Plaintiff's costs of this action, reasonable attorney's fees and reasonable expert witness fees, pursuant to 29 U.S.C. § 2617(a)(3);

D.      Such other and further relief as the Court finds just and proper including, but not limited

to, revision of any personnel records to reflect the receipt and processing of Plaintiff's FMLA 2024 leave request, pursuant to 29 U.S.C. § 2617(a)(1)(B);

E.    Enter a judgment in favor of Plaintiff and against Defendant providing for such relief.

### Count VI

### Interference With Plaintiff's Exercise of Rights Under the FMLA, in Violation of 29 U.S.C. § 2615(a)(1) – November 1, 2024 Warnings

182.    Plaintiff re-alleges and incorporates herein by reference the contents of ¶¶ 1–165.

183.    By warning Plaintiff that "[r]egardless of [Plaintiff's] reasons," she could not leave her position early, despite Plaintiff following proper District procedures to do so, and despite Plaintiff's assertion of FMLA rights, suggesting that Plaintiff had been absent without legal protection from discrimination, retaliation, or discipline, Defendant interfered with, restrained, and denied the exercise of, and attempt to exercise, Plaintiff's rights under the FMLA.

184.    As a direct and proximate result of Defendant's violations of 29 U.S.C. § 2615(a)(1), Plaintiff has suffered from the derogation of her rights under the FMLA, chilling her in the exercise of such rights, and is at risk of harsher penalties to any future discipline issued by Defendant, up to and including termination.

WHEREFORE, Plaintiff respectfully prays that this Court grant:

A.    An order directing Defendant to expunge the November 1, 2024 disciplinary letter from Plaintiff's personnel file, if present, pursuant to 29 U.S.C. § 2617(a)(1)(B);

B.    A declaration that Defendant violated the FMLA when it warned Plaintiff against leaving her work early, even due to a medical condition;

C.    Plaintiff's costs of this action, reasonable attorney's fees and reasonable expert witness fees, pursuant to 29 U.S.C. § 2617(a)(3);

D.    Such other and further relief as the Court finds just and proper, pursuant to 29 U.S.C. § 2617(a)(1)(B);

E.    Enter a judgment in favor of Plaintiff and against Defendant providing for such relief.

## Count VII

### Retaliation Against Plaintiff for Engaging in Protected Activity Under the FMLA, in Violation of 29 U.S.C. § 2615(a)(2) – Forced Transfer of Positions

185.    Plaintiff re-alleges and incorporates herein by reference the contents of ¶¶ 1–165.

186.    The FMLA prohibits an employer from discharging or in any manner discriminating against an individual because she engaged in an activity protected by the FMLA, 29 U.S.C. § 2615(a)(2).

187.    By transferring Plaintiff to the "instructional coach" / "intervention teacher" position during the 2023–24 school year following her return from FMLA leave which was not equivalent to her position as an art teacher, contrary to 29 U.S.C. § 2614, Defendant willfully discriminated and retaliated against Plaintiff for exercising her rights provided by the FMLA, in violation of 29 U.S.C. § 2615(a)(2).

188.    Defendant's subsequent assertions that Plaintiff's FMLA leave was illegitimate, despite multiple medical opinions, including from an independent evaluator of Defendant's own choosing, dating back at least to Plaintiff's November 11, 2020 physician's letter, that she had a qualifying medical condition, give rise to an inference of animus toward Plaintiff because of her protected activity under the FMLA.

189.    Defendant retaliated against Plaintiff for her use of FMLA leave when it placed Plaintiff in the "intervention teacher" position following her return from FMLA leave during the 2023-2024 school year.

WHEREFORE, Plaintiff respectfully prays that this Court grant:

A.    An order directing Defendant to reinstate Plaintiff to the art teacher position in which she would now be employed but for the unlawful transfer, pursuant to 29 U.S.C. § 2617(a)(1)(B);

B.    A declaration that Defendant violated the FMLA when it placed Plaintiff in the "intervention teacher" position upon her September 2023 release to return to work;

C.      Plaintiff's costs of this action, reasonable attorney's fees and reasonable expert witness fees, pursuant to 29 U.S.C. § 2617(a)(3);

D.      Such other and further relief as the Court finds just and proper, pursuant to 29 U.S.C. § 2617(a)(1)(B);

E.      Enter a judgment in favor of Plaintiff and against Defendant providing for such relief.

### Count VIII

**Retaliation Against Plaintiff for Engaging in Protected Activity Under the FMLA, in Violation of 29 U.S.C. § 2615(a)(2) – Failure to Restore to Original Position**

190.    Plaintiff re-alleges and incorporates herein by reference the contents of ¶¶ 1–165.

191.    Defendant's subsequent assertions that Plaintiff's FMLA leave was illegitimate, despite multiple medical opinions, including from an independent evaluator of Defendant's own choosing, dating back at least to Plaintiff's November 11, 2020 physician's letter, that she had a qualifying medical condition, give rise to an inference of animus toward Plaintiff because of her protected activity under the FMLA.

192.    Defendant retaliated against Plaintiff for her use of FMLA leave when it refused to return Plaintiff to her art teacher position following her return from FMLA leave during the 2023-2024 school year.

WHEREFORE, Plaintiff respectfully prays that this Court grant:

A.      An order directing Defendant to reinstate Plaintiff to the art teacher position in which she would now be employed but for the unlawful refusal to restore Plaintiff's position, pursuant to 29 U.S.C. § 2617(a)(1)(B);

B.      A declaration that Defendant violated the FMLA when it refused to return Plaintiff to her position as art teacher, or an equivalent position, upon her September 2023 release to return to work;

C.      Plaintiff's costs of this action, reasonable attorney's fees and reasonable expert witness

fees, pursuant to 29 U.S.C. § 2617(a)(3);

D.    Such other and further relief as the Court finds just and proper, pursuant to 29 U.S.C. § 2617(a)(1)(B);

E.    Enter a judgment in favor of Plaintiff and against Defendant providing for such relief.

## Count IX

**Retaliation Against Plaintiff for Engaging in Protected Activity Under the FMLA, in Violation of 29 U.S.C. § 2615(a)(2) – September 6, 2023 to October 11, 2023 Delay in Returning Plaintiff to Work**

193.    Plaintiff re-alleges and incorporates herein by reference the contents of ¶¶ 1–165.

194.    Defendant's subsequent assertions that Plaintiff's FMLA leave was illegitimate, despite multiple medical opinions, including from an independent evaluator of Defendant's own choosing, dating back at least to Plaintiff's November 11, 2020 physician's letter, that she had a qualifying medical condition, give rise to an inference of animus toward Plaintiff because of her protected activity under the FMLA.

195.    Defendant retaliated against Plaintiff for her use of FMLA leave when it delayed in returning Plaintiff to work between September 6, 2023 and October 11, 2023, despite approval to return to work as early as September 6, 2023 from Plaintiff's medical provider.

196.    As a direct and proximate result of Defendant's violations of 29 U.S.C. § 2615(a)(2), Plaintiff has suffered economic damages, including lost wages and interest she would have earned on that money.

WHEREFORE, Plaintiff respectfully prays that this Court grant:

A.    Damages equal to the amount of wages, salary, employment benefits, and other compensation denied or lost, or other actual monetary loss to Plaintiff by reason of the unlawful delay in returning Plaintiff to work, together with interest thereon, pursuant to 29 U.S.C. § 2617(a)(1)(A)(i) and (ii);

B.    An additional amount as liquidated damages equal to the amount of damages and

interest awarded as requested in paragraph (A) above, pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii);

C.     A declaration that Defendant violated the FMLA when it delayed Plaintiff in returning to work between September 6, 2023 and October 11, 2023;

D.     Plaintiff's costs of this action, reasonable attorney's fees and reasonable expert witness fees, pursuant to 29 U.S.C. § 2617(a)(3);

E.     Such other and further relief as the Court finds just and proper, pursuant to 29 U.S.C. § 2617(a)(1)(B);

F.     Enter a judgment in favor of Plaintiff and against Defendant providing for such relief.

### Count X

**Retaliation Against Plaintiff for Engaging in Protected Activity Under the FMLA, in Violation of 29 U.S.C. § 2615(a)(2) – November 6–17, 2023 Suspension**

197.     Plaintiff re-alleges and incorporates herein by reference the contents of ¶¶ 1–165.

198.     Defendant's suspension without pay of Plaintiff on November 6, 2023, despite her lack of disciplinary record, constituted substantially more severe discipline than Defendant has issued to similarly-situated employees, who had not engaged in protected activity, for more egregious conduct in the past.

199.     Defendant's subsequent assertions that Plaintiff's FMLA leave was illegitimate, despite multiple medical opinions, including from an independent evaluator of Defendant's own choosing, dating back at least to Plaintiff's November 11, 2020 physician's letter, that she had a qualifying medical condition, give rise to an inference of animus toward Plaintiff because of her protected activity under the FMLA.

200.     Defendant retaliated against Plaintiff for her use of FMLA leave when it suspended Plaintiff without pay from November 6, 2023 to November 17, 2023.

201.    As a direct and proximate result of Defendant's violations of 29 U.S.C. § 2615(a)(2), Plaintiff has suffered economic damages, including lost wages and interest she would have earned on that money.

WHEREFORE, Plaintiff respectfully prays that this Court grant:

A.    Damages equal to the amount of wages, salary, employment benefits, and other compensation denied or lost, or other actual monetary loss to Plaintiff by reason of the unlawful suspension from November 6, 2023 to November 17, 2023, together with interest thereon, pursuant to 29 U.S.C. § 2617(a)(1)(A)(i) and (ii);

B.    An additional amount as liquidated damages equal to the amount of damages and interest awarded as requested in paragraph (A) above, pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii);

C.    An order directing Defendant to expunge the November 6, 2023 to November 17, 2023 suspension from Plaintiff's personnel file, if present, pursuant to 29 U.S.C. § 2617(a)(1)(B);

D.    A declaration that Defendant violated the FMLA when it unlawfully suspended Plaintiff from November 6, 2023 to November 17, 2023;

E.    Plaintiff's costs of this action, reasonable attorney's fees and reasonable expert witness fees, pursuant to 29 U.S.C. § 2617(a)(3);

F.    Such other and further relief as the Court finds just and proper, pursuant to 29 U.S.C. § 2617(a)(1)(B);

G.    Enter a judgment in favor of Plaintiff and against Defendant providing for such relief.

### Count XI

**Retaliation Against Plaintiff for Engaging in Protected Activity Under the FMLA, in Violation of 29 U.S.C. § 2615(a)(2) – November 28, 2023 to January 9, 2024 Suspension**

202.    Plaintiff re-alleges and incorporates herein by reference the contents of ¶¶ 1–165.

203.    Defendant's suspension without pay of Plaintiff on November 28, 2023, despite her lack of disciplinary record, constituted substantially more severe discipline than Defendant has issued to similarly-situated employees, who had not engaged in protected activity, for more egregious conduct in the past.

204.    Defendant's subsequent assertions that Plaintiff's FMLA leave was illegitimate, despite multiple medical opinions, including from an independent evaluator of Defendant's own choosing, dating back at least to Plaintiff's November 11, 2020 physician's letter, that she had a qualifying medical condition, give rise to an inference of animus toward Plaintiff because of her protected activity under the FMLA.

205.    Defendant retaliated against Plaintiff for her use of FMLA leave when it suspended Plaintiff without pay from November 28, 2023 to January 9, 2024.

206.    As a direct and proximate result of Defendant's violations of 29 U.S.C. § 2615(a)(2), Plaintiff has suffered economic damages, including lost wages and interest she would have earned on that money.

WHEREFORE, Plaintiff respectfully prays that this Court grant:

A.    Damages equal to the amount of wages, salary, employment benefits, and other compensation denied or lost, or other actual monetary loss to Plaintiff by reason of the unlawful suspension from November 28, 2023 to January 9, 2024, together with interest thereon, pursuant to 29 U.S.C. § 2617(a)(1)(A)(i) and (ii);

B.    An additional amount as liquidated damages equal to the amount of damages and interest awarded as requested in paragraph (A) above, pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii);

C.    An order directing Defendant to expunge the November 28, 2023 to January 9, 2024 suspension from Plaintiff's personnel file, if present, pursuant to 29 U.S.C. § 2617(a)(1)(B);

D.    A declaration that Defendant violated the FMLA when it unlawfully suspended Plaintiff

from November 28, 2023 to January 9, 2024;

E.    Plaintiff's costs of this action, reasonable attorney's fees and reasonable expert witness fees, pursuant to 29 U.S.C. § 2617(a)(3);

F.    Such other and further relief as the Court finds just and proper, pursuant to 29 U.S.C. § 2617(a)(1)(B);

G.    Enter a judgment in favor of Plaintiff and against Defendant providing for such relief.

## Count XII

**Retaliation Against Plaintiff for Engaging in Protected Activity Under the FMLA, in Violation of 29 U.S.C. § 2615(a)(2) – January 2024 Notice to Remedy**

207.    Plaintiff re-alleges and incorporates herein by reference the contents of ¶¶ 1–165.

208.    Defendant's issuance of a final Notice to Remedy threatening termination of Plaintiff on January 29, 2024, constituted substantially more severe discipline than Defendant has issued to similarly-situated employees who had not engaged in protected activities in the past.

209.    Defendant's subsequent assertions that Plaintiff's FMLA leave was illegitimate, despite multiple medical opinions, including from an independent evaluator of Defendant's own choosing, dating back at least to Plaintiff's November 11, 2020 physician's letter, that she had a qualifying medical condition, give rise to an inference of animus toward Plaintiff because of her protected activity under the FMLA.

210.    Defendant retaliated against Plaintiff for her use of FMLA leave when it issued the Notice to Remedy in January 2024.

WHEREFORE, Plaintiff respectfully prays that this Court grant:

A.    An order directing Defendant to expunge the January 2024 Notice to Remedy from Plaintiff's personnel file, if present, pursuant to 29 U.S.C. § 2617(a)(1)(B);

B.    A declaration that Defendant violated the FMLA when it issued the January 2024 Notice to Remedy;

C.      Plaintiff's costs of this action, reasonable attorney's fees and reasonable expert witness fees, pursuant to 29 U.S.C. § 2617(a)(3);

D.      Such other and further relief as the Court finds just and proper, pursuant to 29 U.S.C. § 2617(a)(1)(B);

E.      Enter a judgment in favor of Plaintiff and against Defendant providing for such relief.

### Count XIII

**Retaliation Against Plaintiff for Engaging in Protected Activity Under the FMLA, in Violation of 29 U.S.C. § 2615(a)(2) – Refusal to Process or Acknowledge Plaintiff's February 2024 FMLA Request**

211.    Plaintiff re-alleges and incorporates herein by reference the contents of ¶¶ 1–165.

212.    Defendant's subsequent assertions that Plaintiff's FMLA leave was illegitimate, despite multiple medical opinions, including from an independent evaluator of Defendant's own choosing, dating back at least to Plaintiff's November 11, 2020 physician's letter, that she had a qualifying medical condition, gives rise to an inference of animus toward Plaintiff because of her protected activity under the FMLA.

213.    Defendant retaliated against Plaintiff for her use of FMLA leave when it refused to process Plaintiff's updated FMLA leave request in February 2024.

WHEREFORE, Plaintiff respectfully prays that this Court grant:

A.      An order directing Defendant to appropriately process Plaintiff's February 2024 FMLA request, and place appropriate records of such in Plaintiff's personnel file, if applicable, pursuant to 29 U.S.C. § 2617(a)(1)(B);

B.      A declaration that Defendant violated the FMLA when it ignored Plaintiff's February 2024 FMLA leave request;

C.      Plaintiff's costs of this action, reasonable attorney's fees and reasonable expert witness fees, pursuant to 29 U.S.C. § 2617(a)(3);

D.      Such other and further relief as the Court finds just and proper, pursuant to 29 U.S.C.

§ 2617(a)(1)(B);

E.    Enter a judgment in favor of Plaintiff and against Defendant providing for such relief.

### Count XIV

**Retaliation Against Plaintiff for Engaging in Protected Activity Under the
FMLA, in Violation of 29 U.S.C. § 2615(a)(2) – November 1, 2024 Warnings**

214.    Plaintiff re-alleges and incorporates herein by reference the contents of ¶¶ 1–165.

215.    Defendant's subsequent assertions that Plaintiff's FMLA leave was illegitimate, despite multiple medical opinions, including from an independent evaluator of Defendant's own choosing, dating back at least to Plaintiff's November 11, 2020 physician's letter, that she had a qualifying medical condition, give rise to an inference of animus toward Plaintiff because of her protected activity under the FMLA.

216.    Defendant retaliated against Plaintiff for her use of FMLA leave when it issued disciplinary warnings for leaving the Farmingdale building early in September and October 2024, despite Plaintiff following proper District procedures to do so.

WHEREFORE, Plaintiff respectfully prays that this Court grant:

A.    An order directing Defendant to expunge the November 1, 2024 disciplinary letter from Plaintiff's personnel file, if present, pursuant to 29 U.S.C. § 2617(a)(1)(B);

B.    A declaration that Defendant violated the FMLA when it warned Plaintiff against leaving her work early, even due to a medical condition;

C.    Plaintiff's costs of this action, reasonable attorney's fees and reasonable expert witness fees, pursuant to 29 U.S.C. § 2617(a)(3);

D.    Such other and further relief as the Court finds just and proper, pursuant to 29 U.S.C. § 2617(a)(1)(B);

E.    Enter a judgment in favor of Plaintiff and against Defendant providing for such relief.

### Counts XV–XXII: Violations of the Illinois Human Rights Act

### Count XV

### Disability Discrimination Under the IHRA, in Violation of
### 775 ILCS 5/2-102(A) – November 6–17, 2023 Suspension

217.    Plaintiff re-alleges and incorporates herein by reference the contents of ¶¶ 1–165.

218.    The IHRA prohibits an employer from acting with respect to recruitment, hiring, pro-motion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination. 775 ILCS 5/2-102(A).

219.    Defendant's suspension without pay of Plaintiff on November 6, 2023, despite her lack of disciplinary record, constituted substantially more severe discipline than Defendant has issued to similarly-situated, non-disabled employees for more egregious conduct in the past.

220.    Defendant's subsequent assertions that Plaintiff was not actually disabled or that she had fabricated her disability, despite multiple medical opinions, including from an independent evaluator of Defendant's own choosing, dating back at least to Plaintiff's November 11, 2020 phy-sician's letter, give rise to an inference of animus toward Plaintiff because of her mental disability.

221.    As a direct and proximate result of Defendant's violations of 775 ILCS 5/2-102(A), Plaintiff has suffered economic damages, including lost wages and interest she would have earned on that money.

222.    As a direct and proximate result of Defendant's violations of 775 ILCS 5/2-102(A), Plaintiff has suffered emotional harm, humiliation, mental distress, and insult.

WHEREFORE, Plaintiff respectfully prays that this Court grant:

A.    Damages equal to the amount of wages, salary, employment benefits, and other com-pensation denied or lost to Plaintiff by reason of the unlawful suspension, together with interest thereon, pursuant to 775 ILCS 5/8A-104(B) and (J);

B.    Damages for emotional harm and mental suffering imposed upon Plaintiff by reason of

the unlawful suspension, together with interest thereon, pursuant to 775 ILCS 5/8A-104(B) and (J);

C.    Plaintiff's costs of this action, reasonable attorney's fees and reasonable expert witness fees, pursuant to 775 ILCS 5/8A-104(G);

D.    A declaration that Defendant violated the IHRA when it suspended Plaintiff without pay from November 6, 2023 to November 17, 2023;

E.    Such other and further relief as the Court finds just and proper including, but not limited to, expunction of any disciplinary records regarding the suspension, pursuant to 775 ILCS 5/8A-104(A), (C), and (J);

F.    Enter a judgment in favor of Plaintiff and against Defendant providing for such relief.

## Count XVI

### Disability Discrimination Under the IHRA, in Violation of 775 ILCS 5/2-102(A) – November 28, 2023 to January 9, 2024 Suspension

223.    Plaintiff re-alleges and incorporates herein by reference the contents of ¶¶ 1–165.

224.    Defendant's suspension without pay of Plaintiff on November 28, 2023 constituted substantially more severe discipline than Defendant has issued to similarly-situated, non-disabled employees for more egregious conduct in the past.

225.    Defendant's subsequent assertions that Plaintiff was not actually disabled or that she had fabricated her disability, despite multiple medical opinions, including from an independent evaluator of Defendant's own choosing, dating back at least to Plaintiff's November 11, 2020 physician's letter, give rise to an inference of animus toward Plaintiff because of her mental disability.

226.    As a direct and proximate result of Defendant's violations of 775 ILCS 5/2-102(A), Plaintiff has suffered economic damages, including lost wages and interest she would have earned on that money.

227.    As a direct and proximate result of Defendant's violations of 775 ILCS 5/2-102(A), Plaintiff has suffered emotional harm, humiliation, mental distress, and insult.

WHEREFORE, Plaintiff respectfully prays that this Court grant:

A.    Damages equal to the amount of wages, salary, employment benefits, and other compensation denied or lost to Plaintiff by reason of the unlawful suspension, together with interest thereon, pursuant to 775 ILCS 5/8A-104(B) and (J);

B.    Damages for emotional harm and mental suffering imposed upon Plaintiff by reason of the unlawful suspension, together with interest thereon, pursuant to 775 ILCS 5/8A-104(B) and (J);

C.    Plaintiff's costs of this action, reasonable attorney's fees and reasonable expert witness fees, pursuant to 775 ILCS 5/8A-104(G);

D.    A declaration that Defendant violated the IHRA when it suspended Plaintiff without pay from November 28, 2023 to January 9, 2024;

E.    Such other and further relief as the Court finds just and proper including, but not limited to, expunction of any disciplinary records regarding the suspension, pursuant to 775 ILCS 5/8A-104(A), (C), and (J);

F.    Enter a judgment in favor of Plaintiff and against Defendant providing for such relief.

## Count XVII

### Disability Discrimination Under the IHRA, in Violation of
### 775 ILCS 5/2-102(A) – January 2024 Notice to Remedy

228.    Plaintiff re-alleges and incorporates herein by reference the contents of ¶¶ 1–165.

229.    Defendant's issuance of a Notice to Remedy threatening termination of Plaintiff in January 2024 constituted substantially more severe discipline than Defendant has issued to similarly-situated, non-disabled employees for more egregious conduct in the past.

230.    Defendant's subsequent assertions that Plaintiff was not actually disabled or that she had fabricated her disability, despite multiple medical opinions, including from an independent evaluator of Defendant's own choosing, dating back at least to Plaintiff's November 11, 2020 physician's letter, give rise to an inference of animus toward Plaintiff because of her mental disability.

231.    As a direct and proximate result of Defendant's violations of 775 ILCS 5/2-102(A), Plaintiff has suffered economic damages, including lost wages and interest she would have earned on that money.

232.    As a direct and proximate result of Defendant's violations of 775 ILCS 5/2-102(A), Plaintiff has suffered emotional harm, humiliation, mental distress, and insult.

WHEREFORE, Plaintiff respectfully prays that this Court grant:

A.    Damages for emotional harm and mental suffering imposed upon Plaintiff by reason of the unlawful issuance of the Notice to Remedy, together with interest thereon, pursuant to 775 ILCS 5/8A-104(B) and (J);

B.    Plaintiff's costs of this action, reasonable attorney's fees and reasonable expert witness fees, pursuant to 775 ILCS 5/8A-104(G);

C.    A declaration that Defendant violated the IHRA when it issued the January 2024 Notice to Remedy;

D.    Such other and further relief as the Court finds just and proper including, but not limited to, revocation of the unlawful Notice to Remedy, pursuant to 775 ILCS 5/8A-104(A) and (J);

E.    Enter a judgment in favor of Plaintiff and against Defendant providing for such relief.

### Count XVIII

**Disability Discrimination Under the IHRA, in Violation of
775 ILCS 5/2-102(A) – Failure to Restore to Original Position**

233.    Plaintiff re-alleges and incorporates herein by reference the contents of ¶¶ 1–165.

234.    Defendant's failure to return Plaintiff to her previous position, or one that was equivalent, following her return from medical leave for a documented disability, constituted disparate treatment compared to Defendant's previous treatment of non-disabled individuals returning from medical leave, in which Defendant returned those individuals to the same or an equivalent position.

235.    Defendant's subsequent assertions that Plaintiff was not actually disabled or that she

had fabricated her disability, despite multiple medical opinions, including from an independent evaluator of Defendant's own choosing, dating back at least to Plaintiff's November 11, 2020 physician's letter, give rise to an inference of animus toward Plaintiff because of her mental disability.

236.  As a direct and proximate result of Defendant's violations of 775 ILCS 5/2-102(A), Plaintiff has suffered economic damages, including lost wages and interest she would have earned on that money.

237.  As a direct and proximate result of Defendant's violations of 775 ILCS 5/2-102(A), Plaintiff has suffered emotional harm, humiliation, mental distress, and insult.

WHEREFORE, Plaintiff respectfully prays that this Court grant:

A.  Damages equal to the amount of wages, salary, employment benefits, and other compensation denied or lost to Plaintiff by reason of the unlawful delay in her return to work and unlawful transfer, together with interest thereon, pursuant to 775 ILCS 5/8A-104(B) and (J);

B.  Damages for emotional harm and mental suffering imposed upon Plaintiff by reason of the unlawful delay in her return to work and unlawful transfer, together with interest thereon, pursuant to 775 ILCS 5/8A-104(B) and (J);

C.  Plaintiff's costs of this action, reasonable attorney's fees and reasonable expert witness fees, pursuant to 775 ILCS 5/8A-104(G);

D.  A declaration that Defendant violated the IHRA when it refused to return Plaintiff to her position as an art teacher upon her September 2023 release to return to work;

E.  Such other and further relief as the Court finds just and proper including, but not limited to, reinstatement to the position in which Plaintiff would now be employed but for the unlawful transfer, pursuant to 775 ILCS 5/8A-104(A), (C), and (J);

F.  Enter a judgment in favor of Plaintiff and against Defendant providing for such relief.

## Count XIX

### Disability Discrimination Under the IHRA, in Violation of
### 775 ILCS 5/2-102(A) – Failure to Reasonably Accommodate Disability

238.    Plaintiff re-alleges and incorporates herein by reference the contents of ¶¶ 1–165.

239.    Employers must make reasonable accommodations to known disabilities of employees, unless the employer can demonstrate that the accommodation would be prohibitively expensive or unduly disruptive to the conduct of business. 56 Ill. Adm. Code § 2500.40(a). To do so, employers and employees should engage in an interactive process. *See* 56 Ill. Adm. Code § 2500.40(c)–(d).

240.    Plaintiff made a request for a reasonable accommodation when Gottrich listed a series of accommodations for Plaintiff's mental disability, anxiety, in her September 5, 2023 letter.

241.    Defendant, after summarily refusing to implement Plaintiff's preferred accommodations, refused to implement or engage in additional discussion of any alternative accommodations, an interactive process. Defendant's refusal predated Defendant's chosen independent medical evaluator's determination that, specifically, Plaintiff would not require a third party present in her interactions with Yates.

242.    As a direct and proximate result of Defendant's violations of 775 ILCS 5/2-102(A), Plaintiff has suffered economic damages, including lost wages and interest she would have earned on that money.

243.    As a direct and proximate result of Defendant's violations of 775 ILCS 5/2-102(A), Plaintiff has suffered emotional harm, humiliation, mental distress, and insult.

WHEREFORE, Plaintiff respectfully prays that this Court grant:

A.    Damages equal to the amount of wages, salary, employment benefits, and other compensation denied or lost to Plaintiff by reason of the unlawful failure to reasonably accommodate Plaintiff, together with interest thereon, pursuant to 775 ILCS 5/8A-104(B) and (J);

B.    Damages for emotional harm and mental suffering imposed upon Plaintiff by reason of

the unlawful failure to reasonably accommodate Plaintiff, together with interest thereon, pursuant to 775 ILCS 5/8A-104(B) and (J);

C.     Plaintiff's costs of this action, reasonable attorney's fees and reasonable expert witness fees, pursuant to 775 ILCS 5/8A-104(G);

D.     A declaration that Defendant violated the IHRA when it refused to engage in an interactive process to reach reasonable accommodations for Plaintiff's disabilities;

E.     Such other and further relief as the Court finds just and proper including, but not limited to, reinstatement to the position in which Plaintiff would now be employed but for the unlawful transfer, pursuant to 775 ILCS 5/8A-104(A), (C), and (J);

F.     Enter a judgment in favor of Plaintiff and against Defendant providing for such relief.

### Count XX

**Retaliation Due to Plaintiff's Protected Activities Under the IHRA, in Violation of 775 ILCS 5/6-101(A) – November 6–17, 2023 Suspension**

244.    Plaintiff re-alleges and incorporates herein by reference the contents of ¶¶ 1–165.

245.    Employers may not retaliate against an employee for (i) opposing or reporting conduct that the employee reasonably and in good faith believes to be prohibited; (ii) making a charge, filing a complaint, testifying, assisting, or participating in an investigation, proceeding, or hearing under the IHRA; or (iii) requesting, attempting to request, using, or attempting to use a reasonable accommodation under the IHRA. 775 ILCS 5/6-101(A).

246.    Plaintiff made a request for a reasonable accommodation when Gottrich listed a series of accommodations for Plaintiff's mental disability, anxiety, in her September 5, 2023 letter.

247.    Defendant's suspension without pay of Plaintiff on November 6, 2023, despite her lack of disciplinary record, constituted substantially more severe discipline than Defendant has issued to similarly-situated employees, who had not requested reasonable accommodations, for more egregious conduct  in the past.

248.    Defendant's subsequent assertions that Plaintiff was not actually disabled or that she had fabricated her disability, despite multiple medical opinions, including from an independent

evaluator of Defendant's own choosing, dating back at least to Plaintiff's November 11, 2020 physician's letter, and so did not need any accommodation give rise to an inference of animus toward Plaintiff because of her pursuit of reasonable accommodations under the IHRA.

249.    As a direct and proximate result of Defendant's violations of 775 ILCS 5/6-101(A), Plaintiff has suffered economic damages, including lost wages and interest she would have earned on that money.

250.    As a direct and proximate result of Defendant's violations of 775 ILCS 5/6-101(A), Plaintiff has suffered emotional harm, humiliation, mental distress, and insult.

WHEREFORE, Plaintiff respectfully prays that this Court grant:

A.    Damages equal to the amount of wages, salary, employment benefits, and other compensation denied or lost to Plaintiff by reason of the unlawful suspension, together with interest thereon, pursuant to 775 ILCS 5/8A-104(B) and (J);

B.    Damages for emotional harm and mental suffering imposed upon Plaintiff by reason of the unlawful suspension, together with interest thereon, pursuant to 775 ILCS 5/8A-104(B) and (J);

C.    Plaintiff's costs of this action, reasonable attorney's fees and reasonable expert witness fees, pursuant to 775 ILCS 5/8A-104(G);

D.    A declaration that Defendant violated the IHRA when it suspended Plaintiff without pay from November 6, 2023 to November 17, 2023;

E.    Such other and further relief as the Court finds just and proper including, but not limited to, expunction of any disciplinary records regarding the suspension, pursuant to 775 ILCS 5/8A-104(A), (C), and (J);

F.    Enter a judgment in favor of Plaintiff and against Defendant providing for such relief.

## Count XXI

**Retaliation Due to Plaintiff's Protected Activities Under the IHRA, in Violation of 775 ILCS 5/6-101(A) – November 28, 2023 to January 9, 2024 Suspension**

251.    Plaintiff re-alleges and incorporates herein by reference the contents of ¶¶ 1–165.

252.    Plaintiff made a request for a reasonable accommodation when Gottrich listed a series of accommodations for Plaintiff's mental disability, anxiety, in her September 5, 2023 letter.

253.    Defendant's suspension without pay of Plaintiff on November 28, 2023, substantially more severe discipline than Defendant has issued to similarly-situated employees, who had not requested reasonable accommodations, for more egregious conduct in the past.

254.    Defendant's subsequent assertions that Plaintiff was not actually disabled or that she had fabricated her disability, despite multiple medical opinions, including from an independent evaluator of Defendant's own choosing, dating back at least to Plaintiff's November 11, 2020 physician's letter, and so did not need any accommodation give rise to an inference of animus toward Plaintiff because of her pursuit of reasonable accommodations under the IHRA.

255.    As a direct and proximate result of Defendant's violations of 775 ILCS 5/6-101(A), Plaintiff has suffered economic damages, including lost wages and interest she would have earned on that money.

256.    As a direct and proximate result of Defendant's violations of 775 ILCS 5/6-101(A), Plaintiff has suffered emotional harm, humiliation, mental distress, and insult.

WHEREFORE, Plaintiff respectfully prays that this Court grant:

A.    Damages equal to the amount of wages, salary, employment benefits, and other compensation denied or lost to Plaintiff by reason of the unlawful suspension, together with interest thereon, pursuant to 775 ILCS 5/8A-104(B) and (J);

B.    Damages for emotional harm and mental suffering imposed upon Plaintiff by reason of the unlawful suspension, together with interest thereon, pursuant to 775 ILCS 5/8A-104(B) and (J);

C.    Plaintiff's costs of this action, reasonable attorney's fees and reasonable expert witness fees, pursuant to 775 ILCS 5/8A-104(G);

D.    A declaration that Defendant violated the IHRA when it suspended Plaintiff without pay from November 28, 2023 to January 9, 2024;

E.    Such other and further relief as the Court finds just and proper including, but not limited to, expunction of any disciplinary records regarding the suspension, pursuant to 775 ILCS 5/8A-104(A), (C), and (J);

F.    Enter a judgment in favor of Plaintiff and against Defendant providing for such relief.

## Count XXII

### Retaliation Due to Plaintiff's Protected Activities Under the IHRA, in Violation of 775 ILCS 5/6-101(A) – January 2024 Notice to Remedy

257.    Plaintiff re-alleges and incorporates herein by reference the contents of ¶¶ 1–165.

258.    Plaintiff made a request for a reasonable accommodation when Gottrich listed a series of accommodations for Plaintiff's mental disability, anxiety, in her September 5, 2023 letter.

259.    Defendant's issuance of a Notice to Remedy threatening termination of Plaintiff in January 2024, substantially more severe discipline than Defendant has issued to similarly-situated employees, who had not requested reasonable accommodations in the past.

260.    Defendant's subsequent assertions that Plaintiff was not actually disabled or that she had fabricated her disability, despite multiple medical opinions, including from an independent evaluator of Defendant's own choosing, dating back at least to Plaintiff's November 11, 2020 physician's letter, and so did not need any accommodation give rise to an inference of animus toward Plaintiff because of her pursuit of reasonable accommodations under the IHRA.

261.    As a direct and proximate result of Defendant's violations of 775 ILCS 5/6-101(A), Plaintiff has suffered economic damages, including lost wages and interest she would have earned on that money.

262.    As a direct and proximate result of Defendant's violations of 775 ILCS 5/6-101(A), Plaintiff has suffered emotional harm, humiliation, mental distress, and insult.

WHEREFORE, Plaintiff respectfully prays that this Court grant:

A.    Damages for emotional harm and mental suffering imposed upon Plaintiff by reason of the unlawful issuance of the Notice to Remedy, together with interest thereon, pursuant to 775 ILCS 5/8A-104(B) and (J);

B.    Plaintiff's costs of this action, reasonable attorney's fees and reasonable expert witness fees, pursuant to 775 ILCS 5/8A-104(G);

C.    A declaration that Defendant violated the IHRA when it issued the January 2024 Notice to Remedy;

D.    Such other and further relief as the Court finds just and proper including, but not limited to, revocation of the unlawful Notice to Remedy, pursuant to 775 ILCS 5/8A-104(A) and (J);

E.    Enter a judgment in favor of Plaintiff and against Defendant providing for such relief.

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Respectfully submitted,

*/s/ Andrew N. Coronado*
    One of Plaintiff's Attorneys

Susan M. Matta (ARDC No. 6276653)
    Lead Counsel for Plaintiff, Appearance
    Forthcoming
Andrew N. Coronado (ARDC No. 6348771)
Allison, Slutsky & Kennedy, P.C.
230 West Monroe Street, Suite 2000
Chicago, Illinois 60606
Telephone: 312-364-9400
Facsimile: 312-264-9410
matta@ask-attorneys.com
coronado@ask-attorneys.com

July 17, 2025